Oral Argument not to exceed 15 minutes per side. Mr. Dunlap for the appellant. Good morning. My name is Jim Dunlap and I represent the plaintiffs. I'd like to reserve five minutes. This action is brought under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973. This case is primarily a reasonable modification case in that the plaintiffs in this case had made multiple requests for reasonable modification to defendants. These reasonable modification requests are summarized in a table on page 9 to 11 in the appellant's brief. So could you just explain in a sentence or two what the modifications were that you wanted? Yes, Your Honor. What we wanted to do is have the defendants interpret the CON Certificate of Need criteria, which can be described in three general areas of need, orderly development, and economic feasibility. It is our position that these plainly vague and modifiable terms are not specific and that it's very easy and essential. So to answer Judge Moore's question, you wanted them to specify exactly what you needed to do. Right. And if they found, as they did, that there was no need for a clinic in Johnson City, even though there was no standard of care treatment within 50 miles in any direction, and it had never been established in that area, and that my clients, as well as it was established, at least 400 to 500 disabled persons were having to drive 100 miles round trip. So did they have to find there was a need for a methadone clinic or could they have found there was a need for another opioid treatment clinic? And would that have been sufficient? Respectfully, Your Honor, I would say that they were under an obligation under the ADA to modify their need and allow our clinic to locate. Well, it sounds almost like the way you define reasonable modification, then, as granting you a CON, which is a result as opposed to a reasonable modification. I would like to emphasize that we were asking for a modification within the CON structure. And so, therefore, to simply find that need of the existing 400 to 500 people that were having to drive 100 miles daily would satisfy the need. We would satisfy the economic feasibility. Certainly, we satisfied that criteria to a reasonable degree and to the orderly development for the first standard of care clinic in the area that we were asking to work within the structure. We were never asking simply hand us the CON. And I believe that it would be unfair under the Americans with Disabilities Act to interpret a request for a reasonable modification in any other way than through the legal processes that would allow the CON to be issued. I may be mixing apples and oranges, and you should tell me if I am. But their city, Johnson City, was zoned so that opiate clinics could operate, methadone clinics and the like. Why isn't that sufficient? And we know they granted one. So we know they accommodated at least one clinic or allowed one clinic. So this isn't a case where they denied it outright to anyone trying to operate a methadone clinic. Your Honor, we – and this is more specifically in the companion case. I'm sorry. You can reserve it if you want. Okay. Okay. Later. Okay. Thank you. That in this case the defendants concede that they never attempted and refused to even discuss a reasonable modification. That of all the requests for a reasonable modification that I made in this case on behalf of plaintiffs that once again are shown on page 9 through 11 of appellant's brief, that they refused to even meet. And it would be plaintiff's position that under the Title II of the ADA that a state entity is under an obligation at least to discuss and explore a potential reasonable modification, and therefore a refusal to even talk would not comply with the ADA and would amount to a violation of Title II. Furthermore, defendants – Where is that language in the ADA? I'm sorry. Well, it would be under the implementing regulations 28 CFR 35.150A3, which requires them to issue a report as far as what the burdens and the administrative costs are, and I would – That seems to go to specifications rather than to meeting with you. Where does it require them to meet with you? Well, it would be plaintiff's position that this regulation would in fact place a duty on defendants to at least make a good faith attempt at a reasonable modification, which would inevitably involve at least communicating with us to see if we can satisfy their criteria. Did they not communicate with you in any fashion, even in writing? Very little, and certainly there was no indication of any willingness to discuss a reasonable modification. In the Companion case, I did get a letter from Johnson City's attorney at one point that did mention a reasonable modification, but at the same time they were preparing to travel 250 miles to Nashville for the Certificate of Need hearing on June 26, 2013, and officially opposed us. So at the same time they're saying we want to modify, they were trying to block the CON, so therefore the evidence would suggest that they're really not attempting a reasonable modification. What if they just didn't like your clients and wanted to block the CON, meaning not your clients, the Jane and John Does, but your clients Tri-Cities to which they didn't know any obligation to modify or to accommodate? And they gave it to someone else, so we know they accommodated Jane and John Doe. Well, Your Honor, there's two points I'd like to make on that. First, simply allowing, for example, one restaurant serving African Americans in a community doesn't mean that you don't have a duty to try to allow more than one. The purpose of a CON, a Certificate of Need, is to make sure that there is a good geographic distribution of various health resources. Well, Your Honor, it would be our position, though, that a CON, though, cannot be used to exclude the disabled or to allow expansion of treatment for the disabled to the extent that people are trying to integrate them. And we would suggest that two clinics are better than one and that Johnson City and the defendants never showed how their denial was constituting an undue burden. And simply declaring wholesale exemption from the CON criteria or this is an undue burden, the ADA requires a fact-specific analysis, and they completely failed in that. There's not any evidence in the record of any cost whatsoever for them not to allow our clinic to operate in Johnson City. And so that's what the ADA places a burden on the state entity to show specific facts of an undue burden or fundamental alteration. If they said we'll open seven clinics, we're just not going to let Tri-Cities open, that wouldn't be a violation, right? Your Honor, I would suggest in every case they bear the responsibility to have a fact-specific analysis and a report complying with 35.1. Your Honor, I would suggest that just as there can be an unlimited number of restaurants serving African-Americans, there can be unlimited clinics. Restaurants have to serve everyone, so I don't know what that point is, but since the Civil Rights Act, the courts have held that. So I'm not sure I follow. Well, it would be our position that in every case they have to comply with the ADA, and simply having other clinics does not satisfy that test. So that means then that the reasonable modification really is to get rid of the CON requirements. Your Honor, that would not be the case. Thank you. May it please the court. I'm Sarah Sedgwick with the Tennessee Attorney General's Office, representing the defendants' appellees in this matter. The district court got it right. On page 18 of the district court's decision, it's kind of a distillation of Judge Greer's memorandum and order when he says, In fact, plaintiffs have offered no legal authority or case law support for their very broad theory of the case, which seems to go something like this. I am disabled or seek to provide a covered health service to the disabled. Therefore, I should be automatically exempt from all statutory and regulatory criteria, i.e. need, economic feasibility, and orderly development for the issuance of a CON. So that is, in fact, what the district court found was the upshot of the plaintiff's point of view. Could you all do this in such a way to always exclude opioid treatment clinics or opiate treatment clinics? No, Your Honor. There are 12 other opiate treatment clinics in Tennessee. And also, there was another- In Tennessee, but what they're talking about is Johnson City, and they're alleging their clients had to drive a number of miles because of Johnson City's zoning.  Because of Johnson City's decision not to grant a certificate of need and not to make any reasonable modifications, right? Well, respectfully, that's more directed in the companion case, but there is, I should add- What about the modification point? Well, let me add before I say that is that subsequent to the deficient application for which the plaintiffs filed, for which there was no certificate of need granted, another certificate of need was granted. It's another company. It's the Mountain States. That's not the formal name, but it's related to the Mountain States. To build on Judge Tappar's question, your opponent has cited us, pages 9 through 11 in his brief, saying that these are requests for reasonable modifications and that there were no responses from your client. Is that the case, and did you have a duty to make a response? And if so, why did you not? Your Honor, it is not the case that there was no response. As I was listening to plaintiff's counsel, I noted several places in the record where, of course, a response was made. First of all, the Department of Mental Health, TDMHSAS, actually sat down and met with counsel for TCH, and there was also a letter from my colleague, Ms. Sheldon, who will be arguing the next case, who wrote back a letter or an email but put it in writing in response to his request to the Attorney General's Office for reasonable accommodation. There was, of course, the HSDA hearing in which the certificate of need was denied, and that came after the first letter requesting a reasonable accommodation. So why did you deny reasonable modifications that were requested by your opponent? The application failed and was deficient on the statutory grounds of need, economic feasibility, and orderly development of health care. And it's certainly not correct that the plaintiffs were unaware of these deficiencies. Apparently, they were asking for what they call a reasonable modification of those criteria. What the plaintiffs were asking for was just a blanket exception, and the district court ruled correctly in that. In fact, it is the plaintiff's responsibility initially, the plaintiff bears the initial burden of proposing an accommodation and showing that the proposed accommodation is objectively reasonable. With respect to these certificates of need, what would a reasonable accommodation look like? So you say they didn't request something that amounted to a request for a reasonable accommodation. Can you give this court an example of what would be? That's hard for me to say since plaintiffs never suggested what the reasonable accommodation would be. But let me just say that at the beginning of the HSDA meeting, counsel for the board mentioned the letter that had been received from plaintiffs in the ADA issue and made a suggestion that perhaps if someone wanted a little bit more time to defer this, but expressed also at the end of the hearing, and this is in the transcript, some, I guess I would characterize it as frustration that we didn't know what plaintiffs meant by a reasonable accommodation to the ADA. And I think that is really the heart of this case. One of the purposes of the CON requirement is to spread out throughout the state health resources. And so you could say, hypothetically, I suppose, you could have a requirement that no health resource be within 2 miles or 10 miles or 50 miles of another one. And then they could ask for a reduction of that distance because of the need of people suffering from opiate addiction to be able to walk to the clinic. Perhaps that could have been. They didn't request any of those types of accommodations? No, Your Honor. The only request made to the HSDA that I recall in the record was that the HSDA members should change their votes to just approve it. And they also suggested to the mental health department who had done the expert report as the statute requires, they suggested that they modify it. So not as precise as Judge Moore's question. But they did ask, for example, that they be allowed to locate the clinic within Johnson City. Again, I think that diverges over into the zoning issue, and that's not in this case. They asked for a modification of whatever to allow to operate. I agree. Judge Moore's precision is much better. Had they done that, it would be easier to figure out. But they did ask that, right? That was the application. But I have to say that zoning was not a part of the consideration of the HSDA. So there are only issues. That modification goes to someone else. It goes to someone else. Thank you. Yes. So why did you not, given that there was no opiate treatment facility in Johnson City, and you can tell me I'm wrong on that, but if there was none, why did you and your side in this case not approve a CON for this entity? It is not true that there were not any other opiate treatment providers in the Johnson City area. In fact, there was much discussion before the HSDA about the need, having already been met by providers who were able to treat opioid addiction with Suboxone. The difference here was you just wanted to use methadone, and there were many providers in that area that treat Suboxone. So when we're talking about the 12 entities that had CONs, does that include the Suboxone entities, or is that all methadone? I think I'm correct. Those are all methadone outpatient treatment clinics. And also, as I say, Mountain States was subsequently granted a... So your entity was then approving methadone clinics in 12 other parts of the state, but not in Johnson City. But later, there was an appropriate application that passed muster, and it did open a methadone clinic in Johnson City. So why did this group not pass muster? The best place to look for that is in the details of the mental health report, and that is in the record 89-1. And that report demonstrates that the plaintiff's CON application was deficient. And let me give a few examples of the deficiencies that were identified in the mental health report. The need was not clearly established. TCH... That was later. That was later, and also the other one, this one with TCH, took the national projections and applied them to upper northeast Tennessee, and the mental health report said that there were other effective treatment options for those suffering from opioid addiction. They already exist in the area, the physicians who prescribe Suboxone. That's true for the one that you then approved. Later, yes. That wouldn't distinguish why this one is denied, and then weeks later, months later, whatever, you approve another one that's methadone. But there were certainly other deficiencies. What are they? They were that TCH had no prior experience in operating this type of program other than its manager. There are no existing affiliations or agreements with other health care institutions. There were no letters of support from other entities. The mental health experts could not determine if staffing requirements would be met. And last, it was unclear to the mental health evaluators if TCH even understands all the federal and Tennessee laws governing this type of program. Could TCH apply again after having been denied a CON? Could they, a year later, try to fix all of their deficiencies and apply for a CON? I don't know that there would have been anything keeping them from filing again, but the way that this case progressed is that they, of course, appealed in the administrative forum, and when all was said and done, then they finally dropped their appeal, and it was dismissed with prejudice because they basically lost their lease option in Johnson City. And a CON is site-specific. So the answer is yes, they could apply again. I think they could have, yeah. Is 89-1, were those reasons communicated to Tri-Cities? Oh, yes, I think that everybody had a copy of that. What is it? I don't have it in front of me, I'm sorry. Yes, it is record document 89-1. Is it a letter? What is it? It's an 18-page report, review and analysis of certificate of need application. And so that was given to them? Yes. Okay. So in terms of all the detail as to the deficiencies in the application, Tri-Cities was well aware of that, and yet, repeatedly, over and over again, Tri-Cities just basically demanded a CON. So just to clarify, once they received this 18-page report, you're saying they could have addressed those deficiencies and then submitted a new application or a modification of their prior application, but they didn't do that? They did not do that, and probably the most direct way under the layout of this particular case would have been to actually have a hearing in front of the administrative law judge. I'm not sure that she could have taken any new evidence. Usually that's not the case in an administrative forum, but I don't know why he couldn't have gone back and revised his application and filed a new one. Did any of the requests for modification address items that were then specified in this document 89-1? No, Your Honor. I looked through many of the letters that TCH wrote to the various entities, to mental health, to our office, the Attorney General's office, to HSDA. I'm sure I don't have them all, but I could not find anything other than basically asking for a modification to grant the CON, which dovetails back to Judge Greer's assessment, which, of course, we believe is correct, that the only thing proposed was to grant him the CON. Now, plaintiff says, well, I just asked them to modify it to make that possible. But when the specific things being proposed, well, there were no specific things being proposed in terms of modification, but the only two things being proposed was to change the HSDA's vote denying the CON or change the mental health report, to modify it basically so it would not accurately reflect the expert's report. But in answer to your question, no, Your Honor, I didn't see anything in the record asking for a very specific thing dovetailed to the mental health report. Thank you. Thank you. Your Honor, several times in our request, including at the Certificate of Need hearing on June 26, where I specifically asked the defendants that any deficiencies in our application be identified. And now the Department of Mental Health. Did you get the 18-page report? Yes. So they identified the deficiencies according to the other side, correct? Yes. And could you have then submitted a modified request? Yes. We would have been pleased to have sat down with defendants. Well, why do you have to sit down with them? They give you the deficiencies. You submit a new request that complies, that gets rid of the deficiencies. Why not do that? Well, that was something that we believe would have been part of an interactive dialogue with defendants. This goes back to your initial point. There's nothing I can find in the ADA that requires them to engage in an interactive dialogue with someone who isn't even a beneficiary necessarily of the ADA. So they meet with your client, Tri-Cities. They don't have to. They give you a report. Why can't you do what Judge Larson said and submit something new? Well, it is our position that we asked for that at the CON hearing, and that was not done. HSDA immediately said no, and then at that point under our state remedies, we appealed to the Administrative Procedures Division, which we did. And I tried to interact with the ALJ there. Do you ask for permission to submit a modified application that addressed the deficiencies, and the state said no? Well, this blunder bus of deficiencies that the Mental Health Department issued, for example, it said we had not shown need. Need we had shown there had been 10,000 opioid overdose deaths in the last decade. It was about 100 a year in the Johnson City area. It was our position to meet. Can you answer Judge Larson's question, which is, did you ask, and did they say no, if you could submit a modified request? I do not know if I'd use that specific language, but I would urge the panel that my numerous letters to ask them to identify deficiencies and But they did identify deficiencies, right, in this report? It was our position that we were prepared to meet the material deficiencies. For example, lack of support letters, the problem with putting in opioid treatment programs, there's no local support. And that's not a specific criteria of the CON, are these letters of support. They don't want us in. We're not going to find letters like that. So when did you get the 18-page report of deficiencies? Was that before or after the CON was denied? I believe that was before the CON was denied. So then when you came to the CON hearing, you could address those deficiencies? Yes, and we believe that we did. For example, with need, we showed that there was need in the area for standard of care treatment for opioid addiction. And simply because they said we didn't have letters of support under the ADA, they need to show what's the burden of them waiving that requirement. They've not showed any cost at all to waive any of these items. There's no cost in the record, and the court did not engage in a fact-specific analysis. What's the cost of not saying that you need a letter of support in the area? Zero. Those points that they make, it's a zero cost. They might believe that there is a real benefit to getting letters of support, as opposed to saying, well, this is a silly requirement, we don't need to have it. Well, respectfully, I would say that under the ADA, they're under an obligation to show that. What is the cost? Prior experiences or a relationship with other health care companies, because as you and I both know, with methadone, it can be used in a positive way when you have a lot of good, experienced people administering it, and it can become another drug, addiction, when you have bad people. And we've seen that good clinics do good things and bad clinics do bad things. So this seems like a perfectly reasonable request that you have these criteria met. Your Honor, our manager had established nine clinics with a previous operator. He had extensive experience. Thank you, Lope. We will have the case submitted, and would the clerk call the next case, please?